IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 12, 2004 Session

## JOSEPH AND JEAN GONZALEZ v. STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES, IN THE MATTER OF A.J.H.

**Interlocutory Appeal by Permission from the Court of Appeals, Middle Section
Juvenile Court for Davidson County
No. 2219-68191   Betty Adams Green, Judge**

_____

**No. M2003-02405-SC-S09-JV - Filed June 17, 2004**

_____

In this interlocutory appeal, we consider whether and under what circumstances grandparents may intervene in proceedings brought to terminate the parent-child relationship.  In this case, the grandparents filed a motion in the juvenile court to intervene in a termination of parental rights proceeding.  The juvenile court denied the motion, and the grandparents moved for interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.  The trial court granted the motion.  Following the Court of Appeals' denial of the grandparents' application for permission to appeal, they filed an application for permission to appeal to this Court; we granted the application.  After a thorough review of the record and relevant legal authority, we conclude that the motion filed in juvenile court seeking intervention in the termination of parental rights case is to be analyzed under Tennessee Rule of Civil Procedure 24.  Using this analysis, we find no error and affirm the denial of the motion to intervene.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Juvenile Court Affirmed;
Case Remanded to the Juvenile Court for Davidson County**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Thomas H. Miller, Franklin, Tennessee, for the appellants, Joseph and Jean Gonzalez.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Elizabeth C. Driver, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

### Opinion

### I. Facts and Procedural History

A.J.H.[1] was born on May 11, 2002, in Davidson County, Tennessee, to Malisa and Donald Hall. The appellants, Jean and Joseph Gonzalez, are the paternal grandmother and step-grandfather, respectively, of A.J.H. On May 16, 2002, the Tennessee Department of Children's Services ("the agency") filed in the Juvenile Court of Davidson County a petition for custody and emergency removal of A.J.H. According to the petition, the agency had information from a Michigan protective service agency that Malisa Hall's parental rights to her four older children had been terminated in Michigan based on allegations that Donald Hall had molested two of them.[2] The petition alleged also that the Halls had lived in Michigan and had come to Tennessee for A.J.H.'s birth because they believed that they would be able to keep the child in their care and custody were the birth to occur outside of Michigan. Based on the petition, the Juvenile Court issued an Emergency Protective Custody Order on May 16, 2002, and the child was placed in the foster home in which he now resides.

On May 20, 2002, the petition was heard. The court found that A.J.H. was a dependent and neglected child as defined in Tennessee Code Annotated section 37-1-102(b)(1), -102(b)(12)(B), -102(b)(12)(F), and -102(b)(12)(G). Thus, the court found that custody of A.J.H. should remain with the agency and ordered the agency to prepare a "Plan of Care." This "Plan of Care," or permanency plan, was developed on May 31, 2002. It was hoped that the child would be returned to the parents. The plan made no reference to other relatives. A second permanency plan was developed on May 8, 2003, with the same goal. Again, there was no mention of relatives.

On May 15, 2003, the agency filed a petition to terminate parental rights. On August 18, 2003, the Gonzalezes filed a motion to intervene in the parental termination case.[3] In that motion, the Gonzalezes stated their "wish to adopt their grandson." At the hearing on the petition to intervene, Mrs. Gonzalez testified that she did not know that A.J.H. was in foster care until Donald Hall, her son and the father of A.J.H., called her in mid-June. She acknowledged that she knew that Malisa Hall was pregnant and that the Halls had gone to Tennessee, but she stated that she did not know how to reach them. According to Gonzalez, Donald Hall would call periodically, but he did not disclose where he was or that A.J.H. was not in his custody. At the time of the hearing, she had not seen her grandson and acknowledged that she had not gone to Tennessee to visit him.

---

[1]The record in this case has been sealed, and the child will be identified by the initials "A.J.H."

[2]According to the record, Malisa Hall has five children: daughter A.S., born on May 15, 1996; daughter S.S., born on January 15, 1999; daughter A.H., born on May 10, 2000; son D.W.H., born on April 11, 2001; and son, A.J.H. (the subject of this case) born on May 11, 2002. Donald Hall was not the biological father of the two oldest daughters, A.S. and S.S. The testimony is unclear, but apparently Hall was accused of molesting A.S. and S.S., and under an agreement in which the charges were not prosecuted, he voluntarily surrendered his parental rights to his biological daughter, A.H. It appears also that Hall was the biological father of son D.W.H. and that his parental rights to D.W.H. were also terminated.

[3]Since he was taken into State custody, A.J.H. has been in the custody of foster parents, Edward and Cynthia LaBonne. The LaBonnes also filed a petition to intervene in the termination proceedings.

Mrs. Gonzalez testified that she had not known of the pregnancy, birth, or voluntary surrender of another grandchild, a girl, until several months after the child had been adopted.[4] She stated that Donald Hall had told her that he had to sign away his rights to the baby girl because he had been accused of child molestation. She claimed that she had not known about that child until after the child had been placed in a foster home. Finally, she testified that had she known about A.J.H., she would have come to Tennessee sooner.

Donald Hall maintained that from the time the child was removed until the time the termination petition was filed, the agency case workers did not ask him about his Michigan relatives. He testified that he did not want the child to be placed with his mother, Mrs. Gonzalez, because he believed that he could regain custody of A.J.H. by meeting the case worker's requirements. Additionally, he stated that he wanted to show his parents that he was responsible by dealing with the problem himself. Moreover, an agency case manager, Angela Hilliard, testified that the case worker who was initially involved in the removal of the child from the hospital had asked Donald Hall to identify other family members "in Nashville," but he disclosed neither the names nor locations of any family members in Nashville. (And indeed, there were none in Nashville.) Hilliard never contacted the Halls' Michigan relatives because she was not aware of their existence. She acknowledged that she knew about an aunt and uncle in Kentucky and a non-biological "sister." She stated, however, that Donald Hall never mentioned Mrs. Gonzalez and that she never asked him about her. According to Hilliard, Donald Hall stated that he did not get along with his family.

After the hearing on the motion to intervene, the trial court found that even though the agency "did not actively pursue other relatives," the case workers had nevertheless met their statutory obligation to seek placement within the family. Specifically, the court stated: "Could the Department have done more? Certainly. However, at some point, a parent must step up and contribute to the process." The trial court noted that although Donald Hall was specifically questioned about his relatives, he offered no names or phone numbers of individuals who might be able to take care of the child. In addition, according to the trial court, Donald Hall stated that he "didn't have anything to do with his parents and they did not get along."

The trial court also found that the Gonzalezes had known that Donald Hall did not have the means to care for the child, had done nothing to "follow up with regard to the care of the child," and had previously lost one grandchild because they did not know about the termination proceedings. The court ruled that a third party must demonstrate a "legally protected interest" in the care and custody of a child before intervention is allowed in a parental termination proceeding. The trial court concluded:

> The Court would have permitted the grandmother to intervene if she had
> demonstrated either that she was entitled to intervene by virtue of a statute or prior

---

[4]A.H. was born on May 10, 2000. A Michigan court terminated Donald Hall's parental rights to A.H. by order on March 12, 2001. Donald Hall also filed a voluntary "Release of Child by Parent" on that same date. Malisa Hall's parental rights with regard to A.H. were terminated on July 19, 2001.

court order or that she had exercised significant control and responsibility regarding the child, neither of which has been established.

The Gonzalezes immediately filed an application for interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. The trial court granted permission to file the interlocutory appeal. The Court of Appeals denied the application for permissive interlocutory appeal. This Court granted an interlocutory appeal.

## II. Standard of Review

The issue before the Court is whether the trial court erred in denying the Gonzalezes' motion to intervene as of right. For denial of intervention as of right (for a reason other than the timeliness of the application), review is de novo. State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 191 (Tenn. 2000). Conclusions of law are reviewed de novo upon the record with no presumption of correctness while our "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13 (d) (2003); see also Jones v. Garrett, 92 S.W.3d 835, 838 (Tenn. 2002); In re Valentine, Jr., 79 S.W.3d 539, 546 (Tenn. 2002); Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993).

## III. Analysis

To determine whether the trial court correctly denied the Gonzalezes' motion to intervene, we must first determine which rules apply to intervention in juvenile court proceedings.

### A. Third Party Intervention in Parental Rights Termination Proceedings

The petition to terminate parental rights was filed in Juvenile Court. Although standing to file a petition to terminate parental rights is statutorily restricted to those persons designated in Tennessee Code Annotated section 36-1-113(b) (2001 & Supp. 2003),[5] intervention in such

---

[5]Tennessee Code Annotated section 36-1-113(b) (2001 & Supp. 2003) provides:

The prospective adoptive parent or parents of the child, including extended family members caring for related children, any licensed child-placing agency having custody of the child, the child's guardian ad litem, a court appointed special advocate (CASA) agency, or the department shall have standing to file a petition pursuant to this part or pursuant to title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of such child. The prospective adoptive parents, including extended family members caring for related children, shall have standing to request termination of parental or guardianship rights in the adoption petition filed by them pursuant to this part.

proceedings is not addressed by statute or by the Rules of Juvenile Procedure.[6]

The legislature has provided, however, that jurisdiction to terminate parental or guardianship rights resides concurrently in the chancery, circuit, and juvenile courts. Tenn. Code Ann. § 36-1-113(a) (2001). Because the Rules of Civil Procedure concerning intervention would apply in both chancery and circuit court proceedings to terminate parental rights, and because their application would not compromise the efficacy of juvenile proceedings, we find that standing to intervene in a termination proceeding in juvenile court should be analyzed under Rule 24 of the Rules of Civil Procedure. See Tenn. R. Civ. P. 1 (2003).[7] Accordingly, we expressly overrule any holding to the contrary.[8]

## B. Intervention as of Right

The Gonzalezes contend that they are entitled to intervene as of right in the termination proceedings. Rule 24 of the Tennessee Rules of Civil Procedure (2003) provides in pertinent part:

> 24.01 Intervention as of Right – Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties; or (3) by stipulation of all the parties.

The Gonzalezes support their contention that they have a right to intervene with the following:

1. A biological connection to the child; and
2. The allegation that the agency failed to search for relatives.[9]

---

[6]The Rules of Juvenile Procedure were designed so that issues involving children may be quickly addressed and not encumbered by the rules of more formal proceedings. See Tenn. R. Juv. P. 1(c) (2003). These Rules of Juvenile Procedure do not, however, address intervention.

[7]Tennessee Rule of Civil Procedure 1 provides in pertinent part:
Subject to such exceptions as stated in them, these rules shall govern the procedure in the circuit and chancery courts of Tennessee and in other courts while exercising jurisdiction of the circuit or chancery courts, in all civil actions, whether at law or in equity, including civil actions appealed or otherwise transferred to those courts.

[8]See Skerrett v. Ass'n for Guidance, No. M2002-00218-COA-R3-JV, 2003 WL 21634412, at *2 (Tenn. Ct. App. July 11, 2003) (holding that Tennessee Rule of Civil Procedure 24 is not applicable to proceedings in Juvenile Court).

[9]When a child is removed from the home, "[t]he first preference is to reunite the family by returning the child to his parents or placing the child with relatives; the second is permanent placement through adoption." State v. Smith,
(continued...)

Courts have reached varying conclusions regarding the right of grandparents to intervene in dependency and termination of parental rights proceedings. Jurisdictions according grandparents a right to intervene include the Supreme Court of Nebraska, which noted that once parental rights to a child are terminated, the grandparents' relationship would also be terminated. In re Kayle C., 574 N.W.2d 473, 477-78 (Neb. 1998). Consequently, it found that "grandparents [of a juvenile who is the subject of a dependency proceeding] have a direct legal interest in the subject matter of a juvenile dependency proceeding which entitles them to intervene as a matter of right . . . ." Id. at 478.

The Supreme Court of Iowa has concluded that because Iowa's termination statute specifically provides that upon termination, a court may transfer guardianship and custody to a relative, "grandparents are sufficiently 'interested in the subject matter' of these termination proceedings so as to have a right to intervene . . . ." In re J.R., 315 N.W.2d 750, 752 (Iowa 1982), overruled by In re B.B.M., 514 N.W.2d 425 (Iowa 1994). In a later case, however, brought in the context of a voluntary termination by the biological parents, the Iowa court noted that allowing grandparents to intervene in cases in which the parents did not want their child to be adopted within the family, "would be to elevate the grandparents' interests above the interests of the parents," as well as "delay and disrupt the adoption process." In re B.B.M., 514 N.W.2d 425, 429 (Iowa 1994). That court concluded that where the natural parents have agreed to relinquish their parental rights, "grandparents have no interest to assert that is entitled to legal protection." Id. at 430. Nevertheless, because the child's adoption had failed in that case because of a potential medical condition, the court ultimately held that it was in the best interest of the child to allow the grandparents to intervene. Id. at 431.

Likewise, the Supreme Court of Arizona has addressed the issue in the context of a child whose mother was deceased and whose father relinquished custody of the then eight-month-old baby. Bechtel v. Rose, 722 P.2d 236, 238 (Ariz. 1986). The maternal grandmother sought to intervene in the dependency hearings. Id. That court concluded that "grandparents should be allowed to intervene in their parentless grandchildren's dependency proceedings unless it would not be in the child's best interest." Id. at 242.

The Supreme Court of Utah has held in a custody petition filed after termination of parental rights, that a grandparent has an "inchoate right or interest in the custody and welfare of [grandchildren]," State ex rel. Summers v. Wulffenstein, 571 P.2d 1319, 1322 (Utah 1977), which is a "liberty interest" for purposes of due process analysis. State ex rel. Summers v. Wulffenstein, 616 P.2d 608, 610 (Utah 1980). And, in Missouri, grandparents are given the right to intervene in certain custody proceedings by statute, unless the court decides that such intervention is against the

[9](...continued)
785 S.W.2d 336, 338 (Tenn. 1990) (citing Tenn. Code Ann. § 37-2-403(a)(1)). State and Federal legislation recognize that the placement of children in adoptive homes should be a last resort, pursued only where restoration of a child to the biological family is not possible or appropriate. See, e.g., 42 U.S.C.A. § 625(a)(1) (West 2004); Tenn. Code Ann. §§ 37-2-403(a)(1), -403(d), -414(a)(2) (2001).

best interest of the child. In re M.B., 91 S.W.3d 122, 125 (Mo. Ct. App. 2002). Nonetheless, in custody proceedings to which the statute does not apply, a Missouri court has held that a grandparent's "biological relationship to the child, by itself, does not constitute the necessary "interest" under [the rules of civil procedure], to require intervention." In re Adoption of H.M.C., 11 S.W.3d 81, 90 (Mo. Ct. App. 2000) (citing Mo. Sup. Ct. R. 52.12(a)(2)).

In the majority of cases, however, grandparents are not allowed to intervene in termination cases either because their interests are adequately represented by the parent's attorney or guardian ad litem, or because they are deemed to have no interest in the outcome of the proceedings. In a case in which the grandparents sought intervention in dependency proceedings after a child was removed from their psychotic daughter's custody, a Missouri court found that "the grandparents' position was adequately presented at the hearing" by the mother's attorney and denied intervention, even though the child and mother had resided in the grandparents' home. P.W. v. A.W., 670 S.W.2d 563, 566 (Mo. Ct. App. 1984).

The Supreme Court of Kansas has denied intervention in a parental termination hearing stating:

> While custody of the child will eventually require determination, that is not the direct issue in a [termination] hearing. [The grandmother] is not the parent whose rights to her child are in question. She is not the object of the court's action and, therefore should not be permitted to intervene.

Walker v. State, 630 P.2d 1102, 1106-07 (Kan. 1981). A Florida court has held:

> [The statute] is devoid of authority that would allow a grandparent to enter an ongoing dependency action solely in his or her capacity as a grandparent. It was the [agency], not [the grandmother], who originally petitioned for the adjudication of dependency. It is the child's mother, not [the grandmother], who is legal custodian and custodian-in-fact; it is she, not [the grandmother], who stands to lose a legal right. As previously discussed, [the grandmother] has no right to custody in the event the child is adjudged dependent; under the law, [the grandmother] will not be adversely affected by the outcome of the case.

Hamel v. Seekell (In re J.S.), 404 So. 2d 1144, 1146 (Fla. Dist. Ct. App. 1981).

Ohio has ruled similarly in In re Schmidt, 496 N.E.2d 952 (Ohio 1986). That court held as follows:

> There were no allegations or evidence set forth in the [grandparents'] motion to intervene that would reasonably indicate that [they] had a "right" to custody of, or visitation with, their grandson. While persons "claiming a right" to custody or visitation must be joined as parties to custody proceedings, any such claim must be

colorable. The record in this case reveals only that the [grandparents] had a "desire" for custody or visitation . . . . In summation, the [grandparents] never obtained, through statute, court order, or other means, any <u>legal right</u> to custody or visitation with their grandson.

Likewise, the [grandparents] had no legal interest in the care and custody of their grandson, which would have allowed them to intervene as of right pursuant to Civ. R. 24(A) . . . . Just as the [grandparents'] desire for custody or visitation cannot be construed as a legal right to custody or visitation, the [grandparents'] concern for their grandson's welfare cannot be construed as a legal interest that falls within the scope of Civ. R. 24(A).

<u>Id.</u> at 957.

Although it is conceivable that a grandparent may adduce evidence sufficient to support intervention as of right in a parental termination hearing, we agree with the majority of jurisdictions which hold that the grandparental relationship does not alone support intervention. Here, the grandparents' primary basis for intervention is their biological connection. We find no basis in the statutes, constitution, or common law of Tennessee for the conclusion that the rights and protections extended to parents apply also to grandparents. Additionally, Tennessee Code Annotated section 36-1-117(a)(1) (2001) explicitly lists parties mandatory to termination proceedings; grandparents are not included in this list. Moreover, Tennessee Code Annotated section 36-1-117(d)(1) provides that "[o]ther biological or legal relatives of the child . . . are not necessary parties to the proceeding."

Nor are we persuaded by the grandparents' contention that the agency was slack in the performance of its duties in seeking relative placement. We have held that the "interest" required for intervention as of right "does not include a mere contingent, remote, or conjectural possibility of being affected as a result of the suit, but must involve a direct claim on the subject matter of the suit . . . ." <u>State v. Brown & Williamson Tobacco Corp.</u>, 18 S.W.3d 186, 192 (Tenn. 2000). The Court may not allow speculative rights possibly gleaned from a myriad of circumstances to open termination hearings to every potential custodian. Beyond that, the trial court stated, as we have already noted, "Even though the agency did not actively pursue other relatives because the father was not forthcoming, the case workers had nevertheless met their statutory obligation to seek placement with the family."

This conclusion of law is fully supported by the record. Additionally, intervention as of right is not appropriate in this case because there is a party in the underlying suit, the child's father, who may adequately represent the Gonzalezes' interests. Here, Hall has supported the Gonzalezes' motion to intervene, and, presumably, he will vigorously pursue all of the issues the Gonzalezes

could raise.[10] Particularly in the context of these cases, where delay is to be avoided, the unnecessary addition of parties and their attendant attorneys may not be allowed where the interests at stake are already adequately represented.

We have reviewed the conclusion of the trial court that the Gonzalezes were not entitled to intervene as of right in the termination proceedings. We agree that the Gonzalezes have failed to demonstrate sufficient grounds for intervention as of right. Accordingly, we affirm the judgment of the trial court.

This ruling, made at this interlocutory stage of the proceedings, does not leave the Gonzalezes without a remedy. They may participate in the termination proceedings as witnesses, they may file a petition for custody or adoption, or they may elect other appropriate options.

## IV. Conclusion

Accordingly, the trial court's denial of the motion to intervene is affirmed. This case is remanded to the Davidson County Juvenile Court for further proceedings as may be appropriate. Nothing herein shall be construed as preventing the Gonzalezes from filing a petition for custody and/or adoption. The costs of appeal are taxed to the appellants, Joseph and Jean Gonzalez, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[10]We note that although Hall did not initially inform the Gonzalezes regarding A.J.H., the record indicates that Hall now supports their efforts to gain custody of A.J.H.