IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 22, 2004 Session

## KENNETH A. BRASEL, SR. v. JOHN STANLEY BRASEL, SR., ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-006936-02-1     The Honorable John R. McCarroll, Judge**

---

### No. W2003-02965-COA-R3-CV - Filed August 24, 2004

---

This is a child custody case.  Father/Appellant appeals from the trial court's Order, which denied Father/Appellant's Petition to change custody from the minor child's grandparents to Father. Finding that there is not a material change in circumstances to warrant a change of custody and that Father is not entitled to the Superior Rights Doctrine, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

William G. Hardwick, II of Memphis for Appellant, Kenneth A. Brasel, Sr.

J. Alan Hanover of Memphis for Appellees, John Stanley Brasel, Sr., and Bonnie Brasel

Thomas Wayne Cook and Dorothy L. Cook, Appellees, *pro se*

### OPINION

Kenneth A. Brasel, Sr. ("Father" or "Appellant") is the natural father of Kenneth A. Brasel, Jr. ("Kenny, Jr.") (d.o.b. 8/22/89).  Dorothy A. Brasel, the mother of Kenny, Jr., and Appellant were divorced in the Cheatham County Chancery Court on July 19, 1993.  At that time, Dorothy A. Brasel was awarded custody of Kenny, Jr.  On August 9, 1995, on her way to a hearing with Appellant, Dorothy A. Brasel was killed in an automobile accident.  On that date, temporary custody of Kenny, Jr. was awarded to Appellant's parents, John S. Brasel and Bonnie Brasel (the "Brasels," or "Appellees"). Appellant filed a petition to change custody and the maternal grandparents, Thomas and Dorothy Cook (the "Cooks"), were allowed to intervene prior to the hearing on that petition. On April 1, 1998, Father voluntarily non-suited his petition. On April 7, 1998, the Chancery Court of Cheatham County granted permanent custody to the Brasels, and visitation was granted to the Cooks and to Father.

The present litigation was commenced on February 12, 2003, when Appellant filed a "Petition to Modify Final Decree of Divorce Pertaining to Custody, Visitation, and Property," (the "Petition") against the Brasels and the Cooks, in the Circuit Court of Shelby County.[1] In his Petition, Father seeks full custody of Kenny, Jr. on the grounds of material change in circumstances, specifically:

> (a) Petitioner has divorced and remarried and the previous circumstances of a possibly abusive step-child are no longer present;

> (b) The minor child is older and needs the presence of a father for his proper mental and social development;

> (c) The grandparents are getting older and are not able to care for a teenage child or a pre-teenager;

The Brasels filed their Response on April 22, 2003. On April 29, 2003, the Brasels also filed a Memorandum in support of their position to retain full custody of Kenny, Jr. This matter was heard by the trial court on May 2, 2003. Following this hearing, the trial court entered its "Order on Petition to Modify Final Decree of Divorce Pertaining to Custody, Visitation, and Property" (the "Final Order").[2] The Final Order grants Father more liberal visitation with Kenny, Jr. but denies a change in custody, finding that Father "is not entitled to the application of the Superior Rights Doctrine, nor has he carried the burden of proof that there has been a material change in circumstances justifying any change in custody."

---

[1] Tom B. Harris, an attorney involved in the original proceedings in Cheatham County, was also named in the suit because, as a result of Dorothy A. Brasel's death, Kenny, Jr. has approximately $200,000 that is now on deposit with the Circuit Court Clerk of Shelby County, Tennessee. Mr. Harris was relieved of all responsibility when the case was transferred to Shelby County by Order of the Chancery Court for Cheatham County, entered November 25, 2002.

[2] We note that there are two versions of the "Order on Petition to Modify Final Decree of Divorce Pertaining to Custody, Visitation, and Property" in this record. The first version, which was signed by the trial court on July 7, 2003, was file stamped. This first version does not adjudicate all issues but deals only with the new visitation schedule. The second version is not file stamped or dated but is stamped with the trial judge's signature and attested by the clerk. This second version does adjudicate all issues and, from their briefs, it appears that both sides concede that this second version is the Final Order. In the interest of judicial economy, we will treat the second version as the Final Order for purposes of this appeal.

On July 18, 2003, Father filed a "Motion to Alter or Amend Judgment." The Brasels filed their Response to Father's Motion to Alter or Amend on August 19, 2003. Father's Motion to Alter or Amend was denied by Order of September 11, 2003.

Father appeals and raises two issues for review as stated in his brief:

> I. Whether the Appellant was entitled to the "Superior Rights Doctrine" under Tennessee Law at the child custody hearing of May 2, 2003?
>
> II. Whether the Appellant had proven a material change in circumstances so as to enable him to receive custody of his son at the child custody hearing of May 2, 2003?

We review a trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Our review of a trial court's determinations on questions of law, however, is *de novo,* with no presumption of correctness. *Gonzalez v. State Dep't of Children's Servs.*, 136 S.W.3d 613, 616 (Tenn. 2004).

## Superior Rights Doctrine

In *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002), our Supreme Court held:

> . . . that a natural parent cannot invoke the doctrine of superior parental rights to modify a valid order of custody, even when that order resulted from the parent's voluntary consent to give custody to the non-parent. Instead, a natural parent seeking to modify a custody order granting custody to a non-parent must show that a material change in circumstances has occurred, which makes a change in custody in the child's best interests.

*Id.* at 151.

In *Blair*, the Court outlined four circumstances under which a natural parent is entiltled to presumption of superior rights:

> (1) when no order exists that transfers custody from the natural parent; (2) when the order transferring custody from the natural parent is accomplished by fraud or without notice to the parent; (3) when the order transferring custody from the natural parent is invalid on its face; and (4) when the natural parent cedes only temporary and informal custody to the non-parents. Consequently, when any of these

-3-

circumstances are present in a given case, then protection of the right of natural parents to have the care and custody of their children demands that they be accorded a presumption of superior parental rights against claims of custody by non-parents.

*Id*. at 143.

Although none of the four circumstances outlined *supra* are indicated by the facts of this present case, Appellant contends that he did not knowingly waive his rights because he did not fully understand the consequences of the voluntary non-suit of his 1998 petition. Appellant's contention was addressed by the **Blair** Court, which held:

> Though we have broadly recognized that the right of parental privacy in this state is fundamental, *see, e.g., Hawk*, 855 S.W.2d at 579, nothing in the language of our Constitution, nor in the volumes of our case law, suggests that the superior rights doctrine should assist a parent to obtain custody of a child when a valid court order properly transferred custody from that parent in the first instance. Nor is there any suggestion from these sources that our right to privacy extends so far as to warrant application of the superior rights doctrine even when that valid order results from the natural parent voluntarily consenting to give custody of the child to a non-parent.

Accordingly, Appellant's 1998 voluntary non-suit does not invalidate the April 7, 1998 Order, granting custody of Kenny, Jr. to the Brasels. In the face of this valid Order, and in the absence of any of those circumstances outlined in **Blair**, we find that the trial court did not err in declining to give Appellant the benefit of the Superior Rights Doctrine.

## Material Change in Circumstances

In child custody cases, the law is well established that when a decree awarding custody of children has been entered, that decree is *res judicata* and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change of custody. ***Long v. Long***, 488 S.W.2d 729 (Tenn. Ct. App.1972). In short, once the trial court has made an initial determination with respect to custody, it cannot entertain a subsequent petition to modify custody absent a material change in circumstances such that the welfare of the child demands a redetermination. ***See, e.g., Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App.1995). A "material change in circumstances" justifying modification of a child custody order may include factors arising after the initial determination or changed conditions that could not be anticipated at the time of the original order. ***See Blair v. Badenhope***, 940 S.W.2d 575, 576 (Tenn. Ct. App.1996) (citing ***Dalton v. Dalton***, 858 S.W.2d 324, 326 (Tenn. Ct. App.1993)). If the trial court finds that there has been a material change in circumstances, it will then consider the petition to modify custody using a best interest

standard. ***Woolsey v. McPherson***, No. 02A01-9706-JV-00125, 1998 WL 760950, at \*2 (Tenn. Ct. App. Nov.2, 1998). As this Court has previously recognized, there is a strong presumption in favor of the existing custody arrangement. ***Smithson v. Eatherly***, No. 01A01-9806-CV-00314, 1999 WL 548586 at \*2 (Tenn. Ct. App. July 29, 1999) (citing ***Taylor v. Taylor***, 849 S.W.2d 319, 332 (Tenn.1993)). The party seeking to change the existing custody arrangement has the burden of proof to show both that the child's circumstances have materially changed in a way that was not reasonably foreseeable at the time of the original custody decision and that changing the existing custody arrangement will serve the child's best interests. ***Geiger v. Boyle***, No. 01A01-9809-CH-00467, 1999 WL 499733 at \*3 (Tenn. Ct. App. July 16, 1999) (citing ***Smith v. Haase***, 521 S.W.2d 49, 50 (Tenn.1975.)); ***McDaniel v. McDaniel***, 743 S.W.2d 167, 169 (Tenn. Ct. App.1987); ***Hall v. Hall***, No. 01A01-9310-PB-00465, 1995 WL 316255, at \*2 (Tenn. Ct. App. May 25, 1995). Under this standard, the primary inquiry is whether there has been a material change in the child's circumstances. Although there is no concrete definition for what constitutes a material change of circumstances, this Court has enumerated several factors that should be taken into consideration when determining whether such a change has occurred. In general, the change must occur after the entry of the order sought to be modified and the change cannot be one that was known or reasonably anticipated when the order was entered. ***Turner v. Turner***, 776 S.W.2d 88, 90 (Tenn. Ct. App.1988); ***Dalton v. Dalton***, 858 S.W.2d 324, 326 (Tenn. Ct. App.1993). In addition, the material change in circumstances must be a change in the child's circumstances, not the circumstances of either or both of the parents. ***McCain v. Grim***, No. 01A01-9711-CH-00634, 1999 WL 820216 at \*2 (Tenn. Ct. App. Oct.15, 1999). Finally, the change must affect the child's well-being in a material way. ***Dailey v. Dailey***, 635 S.W.2d 391, 393 (Tenn. Ct. App.1981). Tennessee courts have based modification of child custody decrees on the following criteria: the character of the custodian; the conduct of the custodian; and the child's welfare. ***Townshend v. Bingham***, No. 02A01-9801-CV-00019, 1999 WL 188290, at \*4 -\*5 (Tenn. Ct. App. Apr.6, 1999). The child's preference is only one factor to be considered in deciding custody. ***See*** T.C.A. § 36-6-106 (2001); ***Wilson v. Wilson***, 987 S.W.2d 555, 564 (Tenn. Ct. App.1998); ***Helson v. Cyrus***, 989 S.W.2d 704, 707 (Tenn. Ct. App.1998). In his conference with the trial judge, Kenny, Jr. indicates his preference to live with his Father. However, he is not adamant about his preference, nor does he indicate any true dissatisfaction with the Brasels. Consequently, this Court must look beyond Kenny, Jr.'s preference in determining whether the trial court erred in declining to change the custody arrangement.

The party seeking a change in custody has the initial burden to show a material change of circumstances which affects the welfare of the child. ***Harris v. Harris***, 832 S.W.2d 352, 352 (Tenn. Ct. App.1992). The burden remains on the moving party to show that he or she is comparatively more fit than the party with custody under the challenged custody decree and to show that it would be in the child's best interests for the moving party to be the custodial parent. ***Gorski v. Ragains***, No. 01A01-9710-GS-00597, 1999 WL 511451 at \*4, (Tenn. Ct. App. July 21, 1999) (citing ***Nichols v. Nichols***, 792 S.W.2d 713, 715 (Tenn.1990)); ***Rust v. Rust***, 864 S.W.2d 52, 56 (Tenn. Ct. App.1993). From the record, we find that Appellant has not met this burden.

At the time of the hearing, Appellant had been married to his fourth wife for approximately two years. During this marriage, Appellant resigned from his position with Burkes, in which he was

earning approximately $60,000 per year. From that point, Appellant pursued a bachelor's degree in psychology at Western Kentucky University, which he was about to complete at the time of the hearing. During the time he was pursuing his undergraduate degree, Appellant did not hold a job. Concerning his immediate plans following procurement of his bachelor's degree, Appellant testified that he would enroll in a two year program for his master's degree in clinical psychology. Although Appellant has made some positive changes in his life, this Court cannot overlook the fact that he has no source of income independent of his current wife.

In both his Petition and his testimony, Appellant expresses concern that Kenny, Jr. is not socializing and is becoming increasingly introverted under the care of the Brasels. We have reviewed the entire record in this case, and we find that it does not support Appellant's contention. The testimony adduced at the hearing indicates that Kenny, Jr.'s lack of involvement in school sports and clubs is due to the fact that the schedule of those activities conflicts with his Saturday visits with Appellant. Concerning interaction with schoolmates outside of school, there is no indication that the Brasels have hindered such activities. In short, there is no evidence to suggest that, if Kenny, Jr. does in fact possess an introverted personality, that such trait is the result of his living with the Brasels. From the record as a whole, we find that the Brasels provide a stable and loving environment for Kenny, Jr. If the Brasels are overprotective of Kenny, Jr., it is not to the point of his detriment. Given the Appellant's current situation, his lack of employment, and his past marriage record(s), we do not find that there has been a material change in circumstances such that custody of Kenny, Jr. should be changed. The trial court's Order gives Appellant more expansive visitation with Kenny, Jr. and continues Kenny, Jr.'s visitation with his maternal grandparents, the Cooks. From the record, we believe that the Order provides Kenny, Jr. with the most optimal arrangement, given the circumstances. He will have time with his Father and his mother's family, while remaining in the stable and loving home where he has lived for the better part of his young life.

For the foregoing reasons, we affirm the Final Order of the trial court. Costs of this appeal are assessed to the Appellant, Kenneth A. Brasel, Sr., and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.