FILED
10/16/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 21, 2020 Session

## IN RE ADOPTION OF M.L.S.

**Appeal from the Chancery Court for Hawkins County**
**No. 2019-AD-3      Douglas T. Jenkins, Chancellor**

_____

**No. E2019-01918-COA-R3-CV**
_____

This case involves a petition to set aside a final decree of adoption. The trial court granted the adoptive parents' motion to dismiss the petition. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Rachel Ratliff, Johnson City, Tennessee, for the appellants, Jerry T. and Penny T.

Phillip L. Boyd, Rogersville, Tennessee, for the appellees, Renee G. and Danny G.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

The child at issue in this proceeding, M.L.S.,[1] was born in 2013. Her biological parents died in 2014. Although the record before us is sparse, it reflects that the Tennessee Department of Children's Services became involved and filed some sort of petition with regard to the child in the juvenile court of Hawkins County. After a hearing, the juvenile court entered an order awarding temporary legal custody of the child to her maternal grandmother and step-grandfather ("Grandparents"). According to the order, "[DCS] reported that [Grandparents] were appropriate caregivers for the minor child and that [DCS] would be releasing custody of the minor child to [Grandparents]." The child's

_____

[1] We refer to the minor child and other parties by initials to protect the child's privacy.

paternal great-aunt and great-uncle ("Aunt and Uncle") also appeared at the hearing. According to the order, "[DCS] reported that the parties had worked out a visitation schedule prior to the hearing and that [Aunt and Uncle] would be entitled to a minimum of every other weekend visitation with the minor child." The court went on to find that Grandparents were "appropriate custodians of the minor child." The order states that the trial judge "advised all parties to work together to help raise [the child.]" In conclusion, the order stated that the child was "placed in the temporary legal custody of [Grandparents] with authority to consent to any ordinary or necessary medical, surgical, hospital, educational, institutional, psychiatric, or psychological care." The order states that the matter was "hereby closed" and that no further hearings were scheduled.

On May 18, 2015, the chancery court for Hawkins County entered a final decree of adoption permitting Grandparents to adopt the child. The decree recites that the child's parents were deceased, that Grandparents had "actual physical and legal care of the child," and that they had been awarded custody pursuant to the order of the juvenile court in the aforementioned matter. The adoption decree also states that all parties entitled to notice were served and that all necessary parties were before the court. The adoption decree provided that "the relationship of parent and child is hereby established with all rights and privileges incident thereto," and it stated that Grandparents, as adoptive parents, would "have exclusive care, custody and control of the said child, free from the claims or hindrances of all others[.]"

On January 17, 2019, Aunt and Uncle filed a petition in chancery court to set aside the final decree of adoption. Aunt and Uncle alleged that they "were not served with process and did not receive any form of notice of the filing of the Petition for Adoption by [Grandparents] even though [Aunt and Uncle] were entitled to notice." Aunt and Uncle claimed that Grandparents' petition for adoption included language stating that Grandparents did not have knowledge of any person with legal or physical custody of the child or who claimed custody or visitation rights to the child. Aunt and Uncle asserted that the juvenile court had awarded them visitation in 2014 and that they were exercising their visitation rights at the time. As such, Aunt and Uncle argued that they were "entitled to Notice regarding the adoption of the minor Child." Aunt and Uncle alleged that they had continued to have visitation with the child after the adoption until Grandparents abruptly ended it without reason in June 2017.[2] Aunt and Uncle asserted that they subsequently learned about the adoption and had instituted a separate action in chancery court in September 2018 by filing a "Petition to Enforce Visitation." They represented that the separate matter still remained pending. Aunt and Uncle sought an order setting aside the final decree of adoption from 2015. Alternatively, Aunt and Uncle asked the court to grant

---

[2] In the petition filed by Aunt and Uncle in a related appeal, *In re M.L.S.*, No. E2019-01794-COA-R9-CV, they state that visitation ended in June 2018. It is impossible to ascertain from the record which date is correct.

them visitation according to the visitation schedule ordered by the juvenile court in 2014. They also sought an award of attorney's fees. Aunt and Uncle attached to their petition the 2014 order from the juvenile court and the 2015 adoption decree.

Grandparents filed a motion to dismiss the petition to set aside the adoption decree for failure to state a claim. Grandparents argued that Aunt and Uncle were not entitled to notice of the adoption proceeding pursuant to Tennessee Code Annotated section 36-1-117(d)(1) and that they lacked standing to set aside the adoption decree. At the time of the adoption decree in 2015, the referenced statute provided:

> (d)(1) Other biological or legal relatives of the child or the adult are not necessary parties to the proceeding and shall not be entitled to notice of the adoption proceedings unless they are legal guardians as defined in § 36-1-102 or legal custodians of the person of the child or adult at the time the petition is filed.

Tenn. Code Ann. § 36-1-117 (2015). Regarding the alternative request for visitation, Grandparents relied on Tennessee Code Annotated section 36-1-121(f), which provided, at the time:

> (f) The adoptive parents of a child shall not be required by any order of the adoption court to permit visitation by any other person, nor shall the order of the adoption court place any conditions on the adoption of the child by the adoptive parents. Any provision in an order of the court or in any written agreement or contract between the parent or guardian of the child and the adoptive parents requiring visitation or otherwise placing any conditions on the adoption shall be void and of no effect whatsoever; provided, that nothing under this part shall be construed to prohibit "open adoptions" where the adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child; and provided further, that the permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons.

Tenn. Code Ann. § 36-1-121 (2015). Additionally, Grandparents contended that Aunt and Uncle had actual notice of the adoption based on Aunt's comment on a social media post referencing the adoption. Finally, Grandparents argued that Aunt and Uncle should be barred by the doctrine of laches. Grandparents sought dismissal of the petition and an award of attorney's fees.

The trial court conducted a hearing on February 20, 2019, to jointly address the

petitions in this case and in the companion case. At the conclusion of the hearing, the trial judge announced his conclusion that Aunt and Uncle did not have standing to set aside the adoption for lack of notice because they were not guardians or custodians of the child. However, the trial judge announced that he was taking under advisement the issue regarding visitation. The trial judge said he intended to do more research to determine whether the juvenile court's visitation order survived the adoption and that he would issue a ruling on that issue within the next couple of months.

On March 5, 2019, the trial court entered an order granting Grandparents' motion to dismiss the petition to set aside the adoption "for lack of standing pursuant to T.C.A. § 36-1-117." Aunt and Uncle filed a "Motion for Reconsideration and or Notice of Appeal." On September 30, 2019, the trial court entered an order denying the motion. Aunt and Uncle then filed a notice of appeal to this Court. Around the same time, Grandparents were granted permission to file an interlocutory appeal to this Court in the companion case regarding visitation, and Aunt and Uncle moved to consolidate this appeal with the Rule 9 appeal. This Court entered an order consolidating the matters for the purposes of oral argument only. The order stated that the two cases would not be consolidated for purposes of briefing and that the two cases would be assigned to the same panel.

After further review of the record in this appeal, it appears that the order appealed failed to resolve the alternative request for visitation and both parties' requests for attorney's fees. Rather than remanding for the trial court to resolve those issues at this juncture, we allow this appeal to also proceed as an interlocutory appeal in the interest of judicial economy. *See Roberts v. Bailey*, 338 S.W.3d 540, 541 n.1 (Tenn. Ct. App. 2010).

## II. ISSUES PRESENTED

The determinative issues raised by Aunt and Uncle on appeal, as we perceive them, are:

1. Whether Aunt and Uncle were guardians of the child within the meaning of the adoption statute such that their absence from the adoption proceeding rendered the adoption decree void;

2. In the alternative, whether the trial court should have set aside the adoption decree on the basis of fraud.

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings.

## III. DISCUSSION

### A. Guardianship

- 4 -

Tennessee's statutes governing the termination of parental rights and adoption "also govern the termination of the rights of persons who are a child's 'guardian' as defined in Tenn. Code Ann. § 36-1-102(24)." *In re Bernard T.*, 319 S.W.3d 586, 599 n.29 (Tenn. 2010). "[W]hen guardianship has been granted to DCS or any other party, 'the guardianship carries certain rights that must be dealt with before another party can adopt the child.'" *In re Neveah W.*, 525 S.W.3d 223, 232 n.5 (Tenn. Ct. App. 2017) (quoting *In re Don Juan J.H.*, No. E2010-01799-COA-R3-JV, 2011 WL 8201843, at *3 (Tenn. Ct. App. Sept. 7, 2011)). Accordingly, Tennessee Code Annotated section 36-1-117 provided, at the time of the adoption in this case:

> (a) *Unless* the legal parent or *the guardian*, or, as provided in subsections (b) and (c), the putative biological father of the child *has surrendered* parental or *guardianship rights to the child*, has executed a parental consent that has been confirmed by the court, has waived the person's rights pursuant to § 36-1-111(w), *or unless the person's rights have been terminated by the order of a court of competent jurisdiction, the* legal parents, *guardian of the person of the child* or of an adult, the biological mother, and the established father or putative father of the child *must be made parties to the adoption proceeding or to a separate proceeding seeking the termination of those rights, and their rights to the child must be terminated by a court to authorize the court to order the adoption of the child* or adult by other persons.
> . . . .
> (d)(1) Other biological or legal relatives of the child or the adult *are not necessary parties* to the proceeding and shall not be entitled to notice of the adoption proceedings unless they are legal guardians as defined in § 36-1-102 or legal custodians of the person of the child or adult at the time the petition is filed.
> (2) The legal custodian of the child may only receive notice of the proceeding and may only present evidence as to the child's best interests.

Tenn. Code Ann. § 36-1-117 (2015) (emphasis added). Ignoring the language not relevant to guardians, the statute would read:

> Unless the guardian has surrendered guardianship rights to the child, the guardian of the person of the child must be made [a] part[y] to the adoption proceeding or to a separate proceeding seeking the termination of those rights, and their rights to the child must be terminated by a court to authorize the court to order the adoption of the child by other persons.

*In re M.L.P.*, 281 S.W.3d 387, 391-92 (Tenn. 2009). According to the Tennessee Supreme Court, "a plain reading of this statute indicates that the legal guardians of a child must be joined as parties when *their rights to the child* are being terminated." *Id.* at 392.

On appeal, Aunt and Uncle argue that the adoption is void ab initio because they were "guardians" of the child, and their "guardianship rights" were never terminated, surrendered, or waived as required by Tennessee Code Annotated section 36-1-117(a).[3] At the time of the adoption in 2015, Tennessee Code Annotated section 36-1-102 defined a "guardian" as follows:

> (24)(A) "Guardian" or "guardians" or "co-guardian" or "co-guardians" means a person or persons or an entity, other than the parent of a child, appointed by a court or defined by law specifically as "guardian" or "co-guardian" or "conservator" to provide supervision, protection for and care for the person or property, or both, of a child or adult;
> (B) "Guardian" or "co-guardian" also means a person or entity appointed as guardian or guardians as the result of a surrender, parental consent, or termination of parental rights;
> (C) The rights of the individual guardian or co-guardian or conservator of the person of a minor child or of an adult must be terminated by a surrender or court action before an order of adoption can be entered; provided, that an individual or individuals who receives or receive guardianship pursuant to a surrender, parental consent, or termination of parental rights pursuant to this part or title 37 need not give consent to the adoption when that individual is the petitioner in an adoption;
> (D) When the department, a licensed child-placing agency, or a child-caring agency is the guardian of the child, its rights must be terminated by court action or it must provide consent as defined in subdivision (15)(A) before an adoption can be ordered; . . . .

Tenn. Code Ann. § 36-1-102 (2015). Aunt and Uncle insist that they "meet the statutory definition of 'guardian' as nearly as possible" because they had "guardian responsibilities." Specifically, Aunt and Uncle claim that they meet the definition set forth in subsection (A) because they were "appointed by a court . . . to provide supervision, protection for and care for the person or property, or both, of a child." Because the juvenile court order granted them visitation and stated that the trial judge advised the parties to "work together to help raise her," Aunt and Uncle claim that they were "in essence the definition of being a guardian."

However, Aunt and Uncle omit important language from the definition. In context,

---

[3] In addition to providing that legal guardians are necessary parties, the statute specifies that legal custodians of the child "may only receive notice of the proceeding and may only present evidence as to the child's best interests." *See* Tenn. Code Ann. § 36-1-117(d). The trial court found that Aunt and Uncle were not guardians or custodians. On appeal, Aunt and Uncle contend that they were "guardians" within the meaning of the statute. However, they do not argue that they were "legal custodians" within the meaning of subsection (d).

the full definition of a "guardian" was "a person or persons or an entity, other than the parent of a child, appointed by a court or defined by law *specifically as 'guardian' or 'co-guardian' or 'conservator'* to provide supervision, protection for and care for the person or property, or both, of a child or adult." *Id.* (emphasis added). The order of the juvenile court only awarded Aunt and Uncle "every other weekend visitation" with the child. It awarded temporary legal custody to Grandparents, finding that they were appropriate custodians, "with authority to consent to any ordinary or necessary medical, surgical, hospital, educational, institutional, psychiatric, or psychological care." Aunt and Uncle were never appointed or defined by law specifically as the child's guardian or conservator. *See In re Ashton B.*, No. W2015-01864-COA-R3-PT, 2016 WL 981320, at *9 (Tenn. Ct. App. Mar. 15, 2016) (concluding that a putative biological father was not a "guardian" within the meaning of section 36-1-102(24)(A) when he "had clearly not been appointed the child's guardian, co-guardian, or conservator"). As such, Aunt and Uncle were not the child's guardians within the meaning of the adoption statute.

Tennessee Code Annotated section 36-1-117(a)(1) "explicitly lists [the] parties mandatory" to the proceedings. *Gonzalez v. State Dep't of Children's Servs.*, 136 S.W.3d 613, 620 (Tenn. 2004); *see also In re Josiah T.*, No. E2019-00043-COA-R3-PT, 2019 WL 4862197, at *5 (Tenn. Ct. App. Oct. 2, 2019) ("Subpart (a) of the section specifies who must be made parties to an adoption proceeding.") In *Gonzalez*, our supreme court explained that "grandparents are not included in this list." 136 S.W.3d at 620. To the contrary, the court pointed out, the statute specifically states that "'[o]ther biological or legal relatives of the child . . . are not necessary parties to the proceeding.'" *Id.* (quoting Tenn. Code Ann. § 36-1-117(d)(1)). *See also Skerrett v. The Ass'n for Guidance*, No. M2002-00218-COA-R3-JV, 2003 WL 21634412, at *3 (Tenn. Ct. App. July 11, 2003), *overruled on other grounds by Gonzalez*, 136 S.W.3d at 613 (recognizing that section 36-1-117(a)(1) "identifies the persons who must be made parties to termination and adoption proceedings [but] does not mention members of a child's extended family"). We have also recognized that "[f]ormer foster parents . . . are not listed" by Tennessee Code Annotated section 36-1-117(a) and (d) as necessary parties to an adoption proceeding. *In re K.A.Y.*, 80 S.W.3d 19, 24 (Tenn. Ct. App. 2002).

This Court rejected a similar attempt to set aside an adoption decree in *In re Janessa R.K.B.E.*, No. E2011-01254-COA-R3-CV, 2012 WL 1193123, at *1 (Tenn. Ct. App. Apr. 9, 2012) *perm. app. denied* (Tenn. Aug. 20, 2012), which involved a grandmother who filed a post-adoption Rule 60 motion to set aside the adoption. She alleged that she had filed petitions in juvenile court seeking grandparent visitation and custody, but that "the adoption was granted before she had her hearing." *Id.* at *2. The grandmother claimed that she was not afforded notice of the adoption proceeding or an opportunity to participate. *Id.* The adoptive parents argued that the grandmother "had no guardianship/custodial rights nor right to notice." *Id.* The trial court found that it was unable to grant any relief to the grandmother, and this Court affirmed, concluding that the grandmother was not a necessary party at the adoption proceeding. *Id.* at *1-2. We acknowledged that she was in the process

of seeking custody but ultimately found that she was "neither a legal guardian nor custodian" within the meaning of the statute. *Id.* at \*3. "As a grandparent with no custodial or guardianship rights, [she] was not entitled to notice of the adoption proceedings, nor was she entitled to be made a party." *Id.* Notably, this Court explained that adoptions in Tennessee are "'governed by statutes which are in derogation of the common law,' and must be strictly construed." *Id.* (quoting *In re Adoption of Taylor*, 678 S.W.2d 69 (Tenn. Ct. App. 1984)). As such, we were "required to strictly construe the provisions outlined above governing who is necessary to be a party to adoption proceedings and who is entitled to notice."[4] *Id.; see also In re C.H.*, No. E2016-00702-COA-R9-PT, 2017 WL 416289, at \*3 (Tenn. Ct. App. Jan. 31, 2017) (noting that the grandparents at issue were "neither the guardian nor custodian of the child" within the meaning of section 36-1-117).

In conclusion, Aunt and Uncle were not the child's guardians, and they were not necessary parties to the adoption proceeding. It was not necessary to terminate any guardianship rights prior to the adoption, and the adoption was not void.

## *B. Fraud*

In the event that this Court determined that the adoption was not void, Aunt and Uncle alternatively argued that the adoption decree should have been set aside due to fraud on the chancery court. Aunt and Uncle claim that Grandparents "were well aware" of their visitation right when they filed their adoption petition and that they did not make the chancery court aware of their interest. According to Aunt and Uncle, the adoption petition stated that Grandparents were not aware of any party with "visitation rights" with respect to the child. Thus, they assert that "the trial court would have been within its right to set aside the adoption for fraud on the court" pursuant to Rule 60.02.

Aunt and Uncle never raised the issue of fraud in the trial court or requested relief pursuant to Rule 60.02, and the adoption petition is not part of the record. This argument was raised for the first time on appeal, and therefore, it is waived. *See Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 336 (Tenn. 2020) ("[A]s a general rule, issues raised for the first time on appeal are waived.") (quotation omitted); *In re Layla C.S.*, 389 S.W.3d 337, 339 (Tenn. Ct. App. 2012) (declining to consider a Rule 60 argument in support of setting aside an adoption when it was not raised in the trial court).[5]

## IV. CONCLUSION

---

[4] Additionally, we noted that Rule 60 is designed to correct errors in judgments and to be utilized by a "party" or a "party's legal representative," and because the grandmother was not a party to the adoption proceeding, the trial court could not grant her any relief pursuant to Rule 60. *In re Janessa R.K.B.E.*, 2012 WL 1193123, at \*4.

[5] Aunt and Uncle appear to raise another sub-issue on appeal regarding whether they would have met the qualifications for intervention if they had known about the adoption proceeding and filed a motion to intervene. It is not necessary to resolve this issue under the facts of this case.

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded.[6] Costs of this appeal are taxed to the appellants, Jerry T. and Penny T., for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[6] We want to be clear the trial court has the authority to adjudicate the issue of the requests for attorney fees, as discussed *supra*.